FreemaN, J.,
delivered the opinion of the Court.
The questions presented in this case grow out ot an effort on the part of complainants in the bill above named, together with complainants in four or five other bills consolidated with it, to subject a tract of land once owned by Kirby, and sold to the defendant, Allen, to the payment of debts due from Kirby.
The allegations of the bills are substantially the same. They seek the relief prayed on the ground that Kirby had sold the tract of land in controversy, of about 490 acres, in Smith county, to defendant, Allen, on December 1st, 1862, for $18,000 in Confederate money, and that Allen had gone into possession of said land, taking a bond for title from the said Kirby of that date, which was duly probated and registered on August 7th, 1865; and that said bond showed on its face the consideration to be Confederate money.
They charge that Confederate money being the only consideration that passed between the parties, “the trade was illegal and void, and is a fraud upon the creditors of defendant, Kirby, and has been a hindrance and delay upon their rights as creditors, as defendant, Kirby, has no other property liable to the payment of the debts of his creditors.”
They then allege, “ that the above trade was made after the Federal authorities occupied the country; and that it *609 was contrary to orders upon the subject of using Confederate money; and such trades are contrary to public policy.”
Upon these two allegations, and the law and facts involved in them, the decision of this case must turn. The case has been argued with marked ability and zeal on both sides.
We hold, distinctly, that a sale of property for Confederate money, whether it be a horse or a princely estate, is not, by reason of that fact alone, fraudulent and void, as against creditors.
In view of our repeated adjudications on the question of Confederate money as a consideration for a contract, and as entering into the private contracts of individuals, during the time it was in circulation as the currency of the States engaged in the rebellion, no other conclusion could be arrived at. Indeed, this point is not now very seriously pressed upon us by complainant’s counsel.
The other question presented is, that the trade was made after the occupation of the country by the Federal authorities, and was, therefore, void, as being against the policy of the government in possession at.the time.
This allegation is distinctly made in the bill, the defendants are required to answer it, and that under oath, there being no waiver of the oath in the bill.
The answer of the defendant, Allen, to this allegation, Kirby not answering, (the bill being taken for confessed against him,) is, that, at the time of the purchase of the land, all the south side of the Cumberland river, in Smith county, was in the Confederate lines, and that Confederate money was recognized as the currency of the country, and *610 that Confederate money was of equal value to any other money in circulation.
The only testimony on this question in the record, that is, as to the occupation of the country, is the deposition of G. W. Catron, taken by defendants. In his cross-examination, he states, “that the country about Kirby’s was in the possession of the Confederates, up to about March, 1863. Up to that time, Confederate money was current, and the principal money in circulation.”
So far as the testimony goes, the fact is distinctly proven, that the country where the land lay, so far from being occupied by the Federal authorities, was occupied by the other contending party, or at any rate held by that party, and therefore, no orders of the Federal military authorities would be operative to vitiate the contract.
It is most earnestly maintained, however, that the court can take judicial cognizance of the fact, as a matter of general history, that the county of Smith was in Federal occupation and under Federal control from the fall of the City of Nashville; and that all Middle Tennessee had been restored to the rule of the Federal Government early in 1862; and that the Confederate occupation at the time was but a temporary occupation by a military force; and that such occupation could not displace the power of the Federal Government, but that the character of the country continued Federal territory, notwithstanding this temporary occupation by the Confederate forces.
On this question, it will be seen, from the allegations of the bill itself, that nothing more is claimed, or charged, than a military occupation of the country at the time of the trade, as the illegality of the contract is predicated *611 on the fact alleged “that it was contrary to orders upon the subject of using Confederate money,” and such trades are contrary to public policy.
Now we know that orders are issued by military commanders, and were in fact, as we may assume, issued in many cases for the regulation of districts of country occupied by either one of the belligerents. In this view of the case, the express denial of the answer, without the evidence of Catron, would be conclusive of the matter put in issue by the bill and denial of the answer.
However extended may be the modern doctrine of judicial knowledge, this court does not nor can it take judicial cognizance of the extent of military occupation of the State of Tennessee by either belligerent while that occupation was being contested, whatever we might hold on the question after the contest ceased, and but one party occupied the country and permanently maintained that occupation.
There is no need for judicial cognizance where the facts are so recent as scarcely to have as yet passed into the domain of history, and are so readily susceptible of proof. And being of so uncertain a character in their very nature, based on the movements of armies however large, we do not think they come within the established rules of law on this question.
The rule is thus stated by Justice Selden, in delivering a very able and instructive opinion on the question in the Court of Appeals of New York: “There are, no doubt, cases in which courts, upon questions addressed to them, may take judicial notice of matters of general history and of public and uni *612 versal notoriety, which admit of no dispute,” and that such evidence is only admissible to prove facts of a general and public nature, not those which concern individuals or mere local communities: McKinnon v. Bliss, 21 New York Reports, 214, 216.
Within these principles, which we hold to be the law on the subject, we think it clear that we can not decide the question of fact raised by the pleadings, of military occupation of the country, except upon the proof in the case, and that taken in connection with the answer of defendant Allen, is conclusive in favor of defendant.
It has been urged that we can not treat the title bond as a registered paper, because it shows on its face that it was for Confederate money, and was only registered in 1865, when Tennessee was certainly not one of the Confederate States or in Confederate occupation.
We need' only say, that the consideration of the bond can have no effect on its registration, nor in any way affect the validity of the registration.
If the paper was valid when made, registration simply serves to fix notice of the contract as against creditors of the vendor, but neither makes nor unmakes the contract. If the contract was valid when made, it gave notice of a valid contract; if void, then of a void contract; but had no effect either way in making the contract either valid or void, except, that without registration, the creditor might have overridden the claim of the vendee; with it, the vendee could maintain his right under the contract.
It is very earnestly insisted, that, as this case was *613 prepared in view of a series of decisions of our predecessors, holding contrary views on the subject of Confederate money, from what is now held; the case should be remanded to the court below, in order that the parties might take proof on the question of Federal occupation, and as to when the contract was in fact made.
We can see no grounds on which we could do this, even though a mere meritorious case was before us. But we can see satisfactorily, that the equity of the case has been reached. The proof shows, that the money received by Kirby for this land, has, except a small amount, gone to the payment of his debts, either directly or by having been invested in other lands; that Confederate money at the time, was about of equal value (if not fully so) to any other paper currency in circulation in the country. We see no evidence of the slightest bad faith on the part of Allen, the purchaser, nor in fact is any alleged, further than the purchase of the land, and payment for it, according to his contract, in Confederate money.
The Chancellor dismissed the bills of complainants, but taxed Francis Kirby and Allen, with the costs.
We affirm his decree, except as to taxation of costs. Complainants will each pay the costs incurred in reference to their respective bills in the court below, and will jointly with their sureties in their appeal bond pay the costs of this court.